FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

97 NOV 25 AM 10: 23

U.S. DISTRICT COURT
N.D. OF ALABAMA

Peggy J. Oden, )
    Plaintiff(s); )
)
-vs.- ) No. CV 96-P-111-S
)
Norfolk Southern Railway Company, )
    Defendant(s). )

ENTERED

NOV 2 5 1997

### Opinion

    Defendant Norfolk Southern Railway Company ("Norfolk") has moved for summary judgment in this age and sex discrimination suit by Plaintiff Peggy Oden ("Oden"). Norfolk suggests that the Public Law Board findings of fact concerning Oden's discharge should be given collateral estoppel effect. Norfolk also suggests that the record contains insufficient allegations of sexual harassment to support a hostile work environment claim. For the reasons set forth below, this court concludes that Norfolk's motion is due to be GRANTED.

### Statement of Facts [1]

    This age and sex discrimination action arises out of Norfolk's decision to discharge Oden, a fifty-eight year-old female. Oden was an employee of Defendant Norfolk from September 1971 until her discharge in October 1994. At the time that she was discharged, Oden was employed as a steno-clerk in the office of the superintendent of the Alabama division. Other Norfolk personnel, including the division assistant superintendent, the chief clerk and several other female employees, also worked in the same room. Oden's steno-clerk position was covered by the union

---

    1. This recitation of "facts" is based upon the materials presented by the parties, viewed in the light most favorable to the Plaintiff.

contract and was governed by the terms of the collective bargaining agreement entered into by the union and Norfolk.

In August 1993, Timothy Heilig ("Heilig") was appointed to the position of superintendent of the Alabama division and began working in the same location as Oden. Heilig made a number of changes in the office. He relocated Oden's desk to the front door, away from her filing cabinets, and significantly increased her workload. Beginning around September 1993, Oden claims that Heilig would frequently pass her desk and say "mirror, mirror on the wall." Heilig spent about three days per week in the office, and Oden estimates that Heilig made this comment to her once or twice per week. Oden also alleges that Heilig "liked to be real cute with the young girls," and that she felt harassed by Heilig's failure to include her in this flirtation. Oden suggests that this pattern of activity establishes "hostile work environment" claim of sex discrimination.

In March 1994, Oden's supervisor, Jean Wise ("Wise"), asked Oden to send a memorandum to Norfolk's field agents, advising the agents that monthly overtime reports would no longer be required by the division office. On March 29, 1994, Oden sent out the requested memorandum, concluding with "Thanks for your half-ass handling." The next day, another Norfolk employee, foreman Eddie Sutton ("Sutton") called Oden to complain about the memo. Oden told Sutton that the memo had not been intended for Sutton, and that Sutton should put it back. On the following day, Wise discharged Oden based on the contents of the memorandum.

In April 1994, Oden's union representative met with Heilig, and it was agreed that Oden would be reinstated as a Norfolk employee. Heilig requested that Oden apologize to the Norfolk employees who had received her memorandum and that Oden and Sutton would out their differences. Oden did not apologize to Sutton.

2

Oden claims that, on a Friday in October 1994, Sutton walked past her desk, said "I think I will go berserk and kill somebody," looked back over his shoulder at Oden and laughed. Oden claims that she reported this statement to Wise. On the following Monday morning, Oden delivered a memorandum regarding Sutton's alleged threat to William Eades ("Eades"), a captain of the Norfolk Southern police. Oden sent copies of the memorandum to the president, general chairman and local chairman of her union. On the following Thursday, assistant division superintendent Haskell Stanback ("Stanback") discharged Oden for making a false accusation against Sutton. Oden was replaced by a forty-six year old male.

Oden appealed her discharge as provided by the terms of the collective bargaining agreement. A hearing was held in November 1994; Heilig presided, the union representative appeared on behalf of Oden, and Stanback, Sutton, Wise, Eades, and Oden testified. Oden was permitted to ask questions of the other employees that testified. Following this hearing, Heilig determined that Oden's discharge had been proper. Oden then appealed to the Public Law Board, as provided by the Railway Labor Act. On September 29, 1995, the Public Law Board affirmed Oden's discharge, basing its decision on the facts ascertained at the November 1994 hearing.

In February 1995, prior to the Public Law Board's decision, Oden filed a charge with the Equal Employment Opportunity Commission. Following the issuance by the EEOC of a right-to-sue letter, Oden brought this action under Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967.

## Analysis

### I. Hostile Work Environment Claim

Oden alleges that she was subjected to a hostile work environment in violation of Title VII.

To support this claim, she relies upon evidence including the movement of her desk to the front door of the room, the increase in her workload, Heilig's habit of being "cute" with the younger female employees and, most importantly, Heilig's repetition of the phrase "Mirror, mirror, on the wall" in Oden's presence.

To prevail on a hostile work environment claim of sexual harassment, a plaintiff must satisfy the standard set forth in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). Specifically, a plaintiff must show 1) that the alleged conduct was severe or pervasive enough to create a hostile or abusive work environment, 2) that the environment must be, in objective terms, one that a reasonable person would find hostile or abusive, and 3) that the environment was, in fact, perceived by the plaintiff as hostile or abusive so as to actually alter the conditions of the plaintiff's employment. *Id.* at 21-22. "'Mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview." *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

Although Oden has urged this court to consider a number of factors in support of her hostile work environment claim, including her increased workload, Heilig's interactions with other female employees, the riffling of her desk and computer system, and Heilig's alleged "mirror, mirror" statements, the court has concluded that Oden has no viable hostile work environment claim. Oden has in no way indicated how changes in her workload and the riffling of her desk are a product of sex discrimination. As to the allegations relating to Heilig's pattern of "cute"

4

behavior with other female employees, Oden herself has conceded that she resented the activity not because it was somehow inappropriate but rather because she was not included in the flirtation. Finally, the court has concluded that no reasonable person could interpret Heilig's "mirror, mirror, on the wall" statement as creating an objectively hostile or abusive work environment.[2] Therefore, summary judgment in favor of Norfolk is due to be granted as to Oden's hostile work environment claim.

## II. Wrongful Discharge

Oden also argues that Norfolk's decision to terminate her employment was the product of unlawful age and sex discrimination. Norfolk has countered that Oden's discharge resulted from her false accusations against another employee, as determined by the Public Law Board, and that Norfolk's reasons for discharging Oden were, therefore, non-discriminatory.

To prove discriminatory treatment violating Title VII, a plaintiff must first establish a prima facie case of discrimination. *Coutu v. Martin County Board of County Commissioners*, 47 F.3d 1068, 1073 (11th Cir. 1995). The same analysis applies to ADEA cases. *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1469 (11th Cir. 1991). Absent direct evidence of discrimination, a plaintiff in a termination case must establish a prima facie case by showing that (1) she is a member of a protected class, (2) she applied for and was qualified for the job, (3) despite her qualifications, she was rejected, and (4) the position remained open or was filled by a person

---

2. Indeed, although Oden claims that Heilig said "mirror, mirror, on the wall" to compare Oden to the "ugly old witch" in *Snow White,* this court's review of the applicable fairy tale literature indicates that the character who states "mirror, mirror, on the wall," Snow White's stepmother, is neither old nor ugly, but merely evil. *See* http://www.inform.umd.edu/EdRes/ReadingRoom/Fiction/FairyTales/snow-white ("Though [Snow White's] stepmother was a wicked woman, *she too was very beautiful,* and the magic mirror told her this every day, whenever she asked it") (emphasis added). Even if Heilig may have intended such a comparison, the court cannot reasonably conclude that Title VII was intended to protect employees from comparison with villainous fairy tale characters.

outside the protected class. *Eskra v. Provident Life and Acc. Ins. Co.*, 125 F.3d 1406, 1411 (11th Cir. 1997). In an ADEA action, the plaintiff is not required to show that the replacement employee was under the age of 40, and outside the protected class. *O'Connor v. Consolidated Coin Caterers Corp.*, 116 S. Ct. 1307, 1310 (1996).

"If a prima facie case is established, the inference is raised that discriminatory intent motivated the adverse employment action, and the burden shifts to the employer 'to clearly articulate . . . a legitimate non-discriminatory reason' for the adverse action. If the employer satisfies this burden, the burden again shifts to the plaintiff to show that the proffered reason is a pretext for the true discriminatory reason." *Eskra*, 125 F.3d at 1411 (quoting *O'Connor*, 116 S. Ct. At 1310). To survive a defendant's motion for summary judgment, a plaintiff need not *prove* pretext; rather, the plaintiff must merely put forth sufficient evidence to "allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext. . . . The only issue to be considered by the judge at summary judgment is whether the plaintiff's evidence has placed material facts at issue." *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 921 (11th Cir. 1993). Where evidence of discriminatory intent is entirely lacking, summary judgment is appropriate. *Id.*

Here, Oden suggests that Norfolk's proffered reasons for discharging her—the March 1994 "half-ass handling" memorandum and her October 1994 allegations against Sutton--were pretextual. She suggests that this court should disregard the Public Law Board's factual determination that Oden's claims against Sutton were false and that she was properly terminated from employment with Norfolk. As evidence of pretext, she references a variety of instances of misconduct by other Norfolk employees, employees whose actions did not result in termination.

6

In essence, Oden argues that her termination was unjustified by her conduct, such that a reasonable jury could determine that she was in fact terminated as a result of sex and/or race discrimination.

In light of the Public Law Board's determination that Oden was properly terminated for making false accusations against a co-worker, this court concludes that no reasonable jury could find that Norfolk's proffered reasons for termination were pretextual.[3/] Oden argues that Heilig's alleged "mirror, mirror" statements should be considered direct evidence of pretext. However, as discussed above, the court finds such statements insufficient to support allegations of sex and age discrimination. Oden's proffered circumstantial evidence of pretext is similarly insufficient; while Oden has pointed out several instances of misconduct by other Norfolk employees, none of those instances involved conduct substantially similar to Oden's conduct. Oden has failed to provide any plausible basis for a jury to determine that her termination--affirmed as appropriate by the Public Law Board--was in fact an instance of unlawful employment discrimination. Because the court concludes that Oden has submitted no credible evidence of discriminatory intent by her employer, Norfolk's motion for summary judgment is due to be granted.

Dated:                                        _____
                                              Chief Judge Sam C. Pointer, Jr.

Service List:
    Mr. William F. Gardner
    Mr. Joseph V. Musso
    Mr. Gerald L. Miller

---

3. Although proceedings before an adjustment board such as the Public Law Board do not entirely preempt the institution of a subsequent lawsuit in federal district court, *see Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994), the Railway Labor Act provides that a federal district court may review the findings of an adjustment board only in very limited circumstances. "The findings of [an adjustment board] are final and conclusive and subject to an extremely limited review by the federal courts." *Henry v. Delta Air Lines*, 759 F.2d 870, 871-72 (11th Cir. 1985).